# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NDOKEY ENOW, #435845, 1990859 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-16-4042 |
| SHARON L. BAUCOM, M.D., WARDEN KATHLEEN S. GREEN, WEXFORD HEALTH SOURCES, INC., BEN OTEYZA, M.D., | * | |
| | * | |
| | * | |
| Defendants | * | |
| | *** | |
| NDOKEY ENOW, #435845, #1990859 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-850 |
| RICKY FOXWELL, Warden, TALMADAGE REEVES, MD, | * | |
| | * | |
| Defendants | * | |
| | *** | |
| NDOKEY ENOW, #435845, 1990859 | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-17-2312 |
| RICKY FOXWELL, Warden, WALTER WEST, Assistant Warden, STEPHEN ELLIOTT, Lieutenant, MIKE MUIR, Case Management Supervisor, PAUL KNIGHT, CMS II, | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | *** | |

<u>**MEMORANDUM OPINION**</u>

Ndokey Enow is incarcerated at Eastern Correctional Institution (ECI) in Westover, Maryland. This Memorandum will consider three of his cases, all filed after he was assigned three strikes under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g). In the first two cases, *Enow v. Baucom, et al.*, No. PWG-16-4042, and *Enow v. Foxwell, et al.,* No. PWG-17-850,[1] his complaints asserted the imminent danger exception to § 1915(g), but a number of his claims did not satisfy the exception and were dismissed without prejudice, subject to be refiled with the full fee. What remain in *Baucom*, PWG-16-4042 are his claims regarding inadequate medical treatment for blurred vision and a concussion. Now pending in that case are Enow's summary judgment motion and the defendants' motions to dismiss or, in the alternative, for summary judgment, which I will decide in defendants' favor because the majority of the defendants cannot be liable on the facts as pleaded, and the undisputed facts show that the remaining defendant, Ben Oteyza, M.D., was not deliberately indifferent to Enow's serious medical needs.

In *Foxwell*, PWG-17-850, what remain are Enow's claims that his psychotropic medication was discontinued and that he is suffering from inadequate ventilation. Now pending in *Foxwell*, PWG-17-850, are the Defendants' motions to dismiss or, in the alternative, for summary judgment. I will dismiss the claims against Warden Ricky Foxwell but deny Defendant Talmadge Reeves, M.D.'s motion without prejudice to filing a supplemental motion

---

[1] Defendants Baucom's and Foxwell's names are misspelled on the dockets in PWG-16-4042 and PWG-17-850. *See* State Defs.' Mot., ECF No. 31 in PWG-16-4042 (providing the correct spelling of Defendant Baucom's name); Foxwell's Mot., ECF No. 17 in PWG-17-850 (providing the correct spelling of Defendant Foxwell's name). The Clerk shall update the docket to reflect these proper spellings.

to address, if he can, the issues of disputed fact that he failed to address in his motion, which precluded resolution of the claims against him on summary judgment.

In the third case, *Enow v. Foxwell, et al.*, No. PWG-17-2312, Enow asserts that he is viewed by other inmates as a government informer, and, as a consequence, his life is in danger. He once again invokes the imminent danger exception to § 1915(g). Now pending are Enow's Motion for a Temporary Restraining Order and Preliminary Injunction and "Motion for Supplemental Evidence in Opposition to Defendant's Order to Show Cause to Plaintiff's Motion for a Preliminary Injunction," both of which I will deny because Enow has not shown either a likelihood of irreparable harm if the motion is not granted or a likelihood of success on the merits. And, because only a subset of his numerous claims in that case actually allege imminent danger, I will direct Defendants to file an answer or dispositive motion only with regard to those claims.

## PLRA "THREE STRIKES" RULE

Enow is a frequent filer, with over a dozen unsuccessful cases in this Court. *See* Appendix (chart of prior cases). Enow's multiple case filings impose a significant burden on both the Clerk's office and the Court, thereby earning him three strikes under the PLRA. *See* ECF No. 10 in *Enow v. Feinstein, et al.,* No. PWG-15-3348 (assigning Enow a third "strike" under § 1915(g)) Consequently, he is barred from filing civil actions unless he pays the filing fee or demonstrates that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). Undeterred by the application of the PLRA, Enow has continued to file civil lawsuits, such as those considered here, and only a small subset of the claims he has alleged have been found sufficient to proceed under the standard set forth under § 1915(g). *See Enow v. Baucom, et al.,* No. PWG-16-3553 (D. Md.) (dismissed for failure to address or satisfy "imminent danger"

exception to § 1915(g)); *Enow v. Green, et al.*, No. PWG-16-3554 (D. Md.) (dismissed for failure to address or satisfy "imminent danger" exception); *Enow v. Green*, *et al.,* No. PWG-16-3917 (D. Md.) (dismissed for failure to pay full filing fee and amend complaint after court determined no claims satisfied imminent danger exception); *Enow v. Baucom, et al.*, No. PWG-16-4042 (D. Md.) (all but two claims dismissed without prejudice for failure to satisfy "imminent danger" exception); *Enow v. Wolfe, et al.,* No. PWG-17-341 (D. Md.) (claims satisfied "imminent danger" exception); *Enow v. Foxwell, et al.*, No. PWG-17-850 (D. Md.) (claims of past harm dismissed; claims suggesting imminent danger proceeding); *Enow v. Foxwell, et al.*, No. PWG-17-2312 (D. Md.) (claims satisfied "imminent danger" exception).[2] It is evident that he is attempting to evade the filing fee by claiming, without support, that his claims involve an imminent threat of serious physical injury.  As this Court has previously warned, Enow's "serial unsubstantiated claims of physical injury will not go unnoticed and any future cases filed by Enow will be evaluated in light of what is pleaded, but also in light of all the unsubstantiated claims that he has filed to date."    Order 2, ECF No. 32 in *Enow v. Dovey*, No. PWG-16-615 (D. Md.).

Further, Enow's long, prolix, and repetitive filings impose additional burdens on this Court.  For example, Enow's complaint in *Baucom*, PWG-16-4042, one of the cases now under review, presents claims that have already been raised in *Enow v. Baucom*, PWG-16-3553. Likewise, in four different cases, Enow presented the same claim that he was assaulted by correctional officers on April 18, 2016 while on his way to an adjustment hearing. *See Baucom*, PWG-16-3553; *Green*, PWG-16-3554; *Green*, PWG-16-3917; *Wolfe*, PWG-17-341.  Further,

---

[2]   He also has filed habeas petitions, which fall outside the auspices of § 1915(g).  *See Enow v. Wolfe, et al.*, No. PWG-17-50 (dismissed without prejudice for lack of exhaustion); *Enow v. Green*, No. PWG-16-848 (dismissed without prejudice for lack of exhaustion).  A third habeas petition, *Enow v. Foxwell, et al.*, No. PWG-17-1912, is under review.

Enow's complaints are often internally repetitive, unnecessarily reiterating the facts of a given case in multiple filings. *Compare* Compl. 6-11, ECF No. 1 in *Foxwell*, PWG-17-850, *with* Pl.'s Mem. in Supp. of Opp'n to Foxwell Mot. 2-6, ECF No. 20-1 in *Foxwell*, PWG-17-850; *Compare* Compl. 6-17, ECF No. 1 in *Dovey*, PWG-16-615, *with* Pl.'s Aff. in Supp. of Opp'n 1-5, 9-16, ECF No. 25-3 in *Dovey*, PWG-16-615 (making substantially similar statements, but in slightly different order). He often restates allegations from his verified complaint and/or supplements to the complaint in affidavits. Similarly, he includes copies of the same exhibits multiple times during the pendency of a single action. *E.g.,* Med. Recs. 1-26, ECF No. 1-2, and Med. Recs., ECF No. 27-2 in *Baucom*, PWG-16-4042 (substantially the same medical records accompanying Complaint and Opposition to Motion to Dismiss).

Enow's history of burdensome and abusive filings prompted this Court on November 27, 2017, to impose certain limits on his filings in all his current and future civil, non-habeas cases: Enow's filings may be no more than 10 single sided pages unless he first obtains the Court's permission; he may verify his complaints but may not accompany his pleadings with his own affidavits; his exhibits may not exceed 25 pages unless permitted by the Court; and, in the future, if he files another claim that does not satisfy the imminent danger standard at 28 U.S.C. § 1915(g), whether accompanied by actual claims of imminent of danger or not, he will be required to show cause why he should be denied the privilege of filing any forma pauperis proceedings. Order, ECF No. 38 in *Baucom*, PWG-16-4042. While these procedures have lessened the burdensomeness of Enow's vexatious filings, they have not done so sufficiently to deter him from abusing the imminent danger exception to § 1915(g) of the PLRA. For that reason I will impose new restrictions on his filing of new lawsuits that seek to invoke this

exception, designed to enable the Court to determine more readily whether his claims of imminent danger are plausible, or, as has been the case so frequently in the past, without merit.

## STANDARDS OF REVIEW

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences [from those facts] in favor of the plaintiff." *Hall v. DirectTV*, LLC, 846 F.3d 757, 765 (4th Cir. 2017). Further, a pro se plaintiff's pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (brackets and internal quotation marks omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

-- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## LIABILITY UNDER § 1983

In *Baucom*, PWG-16-4042, and *Enow*, PWG-17-850, Enow brings § 1983 claims of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against his medical providers and other defendants.[3] All but the medical providers contend that

---

[3] Although Enow's Complaints in *Baucom*, PWG-16-4042, and *Foxwell*, PWG-17-850, allege that Defendants' actions violated numerous federal and state statutes, Constitutional provisions, and the common law, the Affidavits he filed in support of his own motions for summary

Enow fails to state a claim against them because he does not allege their personal involvement in his medical care.

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under § 1983 under a theory of respondeat superior.[4] *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) Supervisory liability may attach under 42 U.S.C. § 1983 if (1) the defendant had actual or

---

judgment in both cases, Aff. 5-7, 8-12, ECF No. 14-4 in *Baucom*, PWG-16-4042, and Aff. 5-7, 10-17, ECF No. 12-1 in *Foxwell*, PWG-17-850, clarify that his remaining claims allege only Eighth Amendment violations. In any event, Enow's cursory references in both cases to a litany of causes of action is insufficient to state a claim, and any other claims would be subject to dismissal. *See Moore v. Jordan,* No. TDC-16-1741, 2017 WL 3671167, at *4 (D. Md. Aug. 23, 2017) ("Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.").

[4] Respondeat superior is a legal doctrine which holds that in some circumstances an employer is responsible for the actions of employees performed within the course of their employment.

constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799.

## EIGHTH AMENDMENT CLAIMS

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. To prevail on an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Deliberate indifference to a serious medical need requires proof that, objectively, the inmate was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As the Fourth Circuit explained in *Lightsey*, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." 775 F.3d at 178. Therefore, "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id*.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer,* 511 U.S. at 839–40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F.3d 383, 390 (4th Cir. 2001).

Of import here, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green,* No. PJM-09-1942, 2012 WL 1999868, at *2–3 (D. Md. June 4, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *see Wester v. Jones,* 554 F.2d 1285 (4th Cir. 1979). Further, "any negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones,* 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

<u>*Enow v. Baucom, et al.*, No. PWG-16-4042</u>

Enow initiated this case pursuant to 42 U.S.C. § 1983 by filing a verified Complaint, ECF No. 1,[5] a Motion for Leave to Proceed in Forma Pauperis, ECF No. 2, and a Motion for a Temporary Restraining Order, ECF No. 3.[6] I determined that Enow's claims of inadequate medical treatment for blurred vision and a concussion possibly posed imminent danger of serious physical injury, especially in light of the fact he is blind in one eye and suffering from ongoing headaches and other ailments that he attributes to a purported concussion. Order, ECF No. 5. I directed Defendants Wexford Health Sources, Inc. ("Wexford"), and Ben Oteyza, M.D. (collectively, the Medical Defendants) and Sharon Baucom, M.D., Director of Clinical Services for the Maryland Department of Public Safety and Correctional Services, and Warden Kathleen Green (collectively, the State Defendants) to respond to these specific claims. *Id.* As to the other claims raised in the Complaint, none of which suggested Enow was in imminent danger of serious physical injury, I instructed Enow that he must pay the filing fee to pursue them. Enow did not pay the filing fee; thus, his other claims will not be considered here.

Enow filed a Motion for Summary Judgment, ECF No. 14, along with a Memorandum and an Affidavit in Support, both of which he verified, ECF Nos. 14-3, 14-4. Thereafter the Medical Defendants filed a Motion to Dismiss or, in the Alternative, Cross-Motion for Summary Judgment and Opposition to Enow's Motion. ECF No. 22. Enow and the Medical Defendants fully briefed their cross-motions, ECF Nos. 14-3, 22-3, 27, 30, and both parties provided exhibits in support of their positions, ECF Nos. 14-2, 14-4, 22-4, 22-5, 27-2. Enow's oppositions are

---

[5] ECF numbers within this section refer to filings within PWG-16-4042, unless otherwise indicated. Likewise, in the sections discussing *Foxwell*, PWG-17-850 and *Foxwell*, PWG-17-2312, ECF numbers refer to the filings within the case being discussed, unless otherwise indicated.

[6] Enow filed a second Motion for Temporary Restraining Order, ECF No. 9. I denied both motions for temporary restraining orders. ECF Nos. 12, 34.

verified. The State Defendants also filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 31, which the parties briefed, ECF Nos. 31-1, 35, and for which both parties provided exhibits in support of their positions, ECF Nos. 31-2, 31-3, 35-1. A hearing is not necessary. *See* Loc. R. 105.6.

*Enow's Claims*

Enow claims that on January 15, 2015, an ophthalmologist diagnosed him with cataracts in both eyes and recommended that he remain under medical supervision. Compl. 4, ¶¶ 12-14, ECF No. 1. On March 5, 2015, a prison medical provider referred him to the optometry department for an eye examination for blurred vision in his left eye. *Id*. On March 18, 2015, an optometrist prescribed eyeglasses for him and scheduled him for a follow-up appointment. On April 20, 2015, an optometrist examined him and diagnosed him as legally blind in his right eye. *Id.* at 4, ¶ 14. He claims that on August 30, 2015, Dr. Alesha Spellman-Smith, an optometrist, completed a hospital specialty service request for Enow's ophthalmology consultation.

Enow claims that he suffers recurring pain from his eye injury, macular degeneration, blurry distance vision, eye fatigue, light sensitivity, migraine headaches and watery, burning, and itching eyes, and complains that he has not been provided consultation with a physician qualified to assess and treat his eye condition. *Id*. at 14-15, ¶ 15. He alleges that he is in danger of permanent loss of vision in both eyes. Of note, Enow does not allege that Dr. Oteyza denied, hindered, or was otherwise involved in any decision concerning a referral to an ophthalmologist. He generally claims that medical records are not used to assist in diagnosis. *Id*. at 11, ¶ 22.

Enow also maintains that he suffered a concussion on November 19, 2015, when a fellow inmate struck him in the head with a hard object, and has blackouts, constant cluster migraines headaches, and neck and back pain as a result. *Id.* at 6. He faults Dr. Oteyza for

failing to order a CT scan or MRI and for not referring him to a physician who specializes in brain injury. *Id*. at 6. Enow asks for declaratory relief and compensatory damages of $300,000.

## *Discussion*

### Wexford

The Medical Defendants argue that Enow does not raise any claims against Wexford or specify any unconstitutional conduct by Wexford. Enow only alleges that Wexford, pursuant to a contract with the Division of Correction ("DOC"), provided medical services for DOC prisoners and employed Dr. Oteyza. Compl. 3, ¶¶ 5-6. As noted, Enow cannot state a claim against Wexford based on the actions of its employees under a theory of vicarious liability (*respondeat superior*). *See Monell*, 436 U.S. at 690; *Love–Lane,* 355 F.3d at 782.

In his opposition, Enow argues that Wexford is liable under the doctrine of supervisory liability, but he does not provide any factual substantiation. Pl.'s Opp'n 11. As noted, supervisor liability may attach under § 1983 where a supervisor has actual or constructive knowledge of a subordinate's conduct that posed a pervasive risk of a constitutional injury. *See Shaw*, 13 F.3d at 799. As Enow fails to allege facts or provide exhibits or documentation to show that Wexford had either actual or constructive knowledge of any medical provider's alleged deliberate indifference to Enow's medical needs, he fails to state a claim against Wexford. For these reasons, the claims against Wexford are dismissed. *See id.*

### Dr. Oteyza

Enow claims that Dr. Oteyza acted with deliberate indifference to his serious medical needs regarding his concussion, thereby providing him with constitutionally inadequate medical care in violation of the Eighth Amendment. Compl. 7, ¶ 19. He alleges that on November 19, 2015, he suffered a concussion. *Id.* at 6, ¶ 19. When Enow complained about resultant

"blackouts," migraine headaches, and neck and back pain on December 18, 2015, Dr. Oteyza prescribed on 600 mg of Motrin and 500 mg of Roboxin for muscle relaxation. *Id.* Enow asserts that Oteyza ignored his request for an MRI or CT scan, and a consultation referral to a medical specialist in brain injury. Enow takes exception to Oteza's comments on the medical record that read: "complains of multiple pain. From Cameroon, Africa. Advised that human [sic] sustain injuries, recover from acute pain and move on." *Id.* at 7; Med. Recs. 24, ECF No. 1-2.

The Medical Defendants filed verified copies of Enow's medical records and Dr. Oteyza's affidavit. Oteyza asserts that there are no medical records documenting Enow's alleged assault and concussion on November 19, 2015. Oteyza Decl. ¶¶ 5-6, ECF No. 22-5. The only medical record of an assault at a time close to November 19, 2015, is of an assault by a cellmate on November 25, 2015, during which Enow's finger was lacerated and following which he sought medical attention. *Id.* ¶ 7; Med. Recs. 15-19, ECF No. 22-4. The medical record for Enow's November 25, 2015 medical visit show that Enow was alert and oriented, his vital signs were stable, and he was in no distress. Med. Recs. 15-19, ECF No. 22-4. His only obvious injury was a laceration on his finger. Enow did not report suffering a concussion or suffering headaches, blackouts, or neck and back pain during his medical visit on November 25, 2015, only six days after the alleged assault, nor in subsequent medical visits on December 3 and 6, 2015. *Id.* at 20, 23, 24. Enow did, however, submit an undated sick call slip that is marked received on December 2, 2015, stating that he was assaulted on November 19, 2015 by his cell buddy Rawl Johnson, suffered a concussion, and "passed out." *Id.* at 22. Enow complained on that sick call slip for the first time that he has suffered migraine headaches and dizziness since the assault. *Id.*; Oteyza Decl. ¶ 6.

14

Oteyza examined Enow on December 18, 2015 in the prison chronic care clinic. Oteyza Decl. ¶ 8. During the examination, Enow told Oteyza he had concussion in November of 2015, and was suffering consequent neck and back pain, but he did not complain about vision problems or headaches. *Id.* The "physical examination revealed no acute distress, normal eyes, ears, nose, mouth and throat, Plaintiff's neck was supple without adenopathy or enlarged thyroid, normal musculature and extremities." *Id.* The examination "was otherwise unremarkable." *Id.* Oteyza concluded that "[t]here was no clinical evidence of any head trauma or concussion." *Id.* He noted that Enow had current prescriptions for Motrin and muscle relaxant, and he prescribed 600 mg of ibuprofen for Enow's complaints of pain. In Oteyza's opinion, "to a reasonable degree of medical probability, there was no medical indication that Enow needed an MRI or CT scan, or needed treatment by a physician specializing in brain injuries, for the alleged November 19, 2015, concussion." *Id.* ¶ 12.

After Enow's December 18, 2015 examination, he did not report any headaches, dizziness or blackouts to medical providers until December 27 or 28, 2016, when he reported that he had been involved in an altercation on December 26, 2016. *Id.* ¶¶ 9-10. However, "[t]here is no medical documentation of an assault on Plaintiff on December 26, 2016." *Id.* ¶ 9. When Enow "was evaluated by a nurse at sick call for complaints of headaches, nose bleeding, body pain and dizziness on December 28, 2016," his "sclera was red, but Plaintiff was otherwise alert and oriented, with no signs of nasal bleeding." Enow "was instructed to take Motrin for headaches." *Id.* On January 31, 2017, Dr. Oteyza examined Enow with regard to his complaints of being attacked in December 2016. Med. Recs. 63, ECF No. 22-4. In Oteyza's opinion, the December 2016 complaints do not relate to the alleged November 19, 2015 concussion. *Id.* Enow did not submit any sick call slips for headaches, dizziness, or blackouts after that

appointment. Oteyza Decl. ¶ 10. Oteyza asserts that he reviewed Enow's medical records when he examined him on December 18, 2015 and January 31, 2017, and that Enow's "medical records indicate that [his] medical history was considered at encounters with other medical providers" as well. *Id*. ¶ 13.

Viewing the evidence, including Enow's verified Complaint, in the light most favorable to Enow, the facts are insufficient to demonstrate that Oteyza acted with reckless disregard to Enow's serious medical needs. The medical records fail to corroborate Enow's claim of a concussion on November 19, 2015, or any assault significant enough to prompt him to seek medical help. Importantly, when Oteyza examined Enow on December 18, 2018, he found no clinical evidence that Enow had suffered a concussion or other head trauma, thereby obviating any necessity for a CT scan, MRI, or referral to a neurologist or other specialized medical provider. While Oteyza's comments concerning Enow's Cameroonian origin and reference to pain as a human condition that must be accepted do not suggest the bedside manner that most would seek in a physician, they do not substantiate a claim of deliberate indifference under these facts. Enow's Complaint reflects a disagreement with Oteyza about the course of treatment for his alleged concussion, but the allegations do not amount to constitutional claim. *See Wright*, 766 F.2d at 849.

Further, the Complaint does not raise any specific allegations that Oteyza was involved in or supervised the provision of Enow's eye care, and therefore he cannot be found deliberately indifferent with regard to Enow's vision concerns. *See Shaw*, 13 F.3d at 799; *Vinnedge*, 550 F.2d at 928–29. Under these circumstances, Enow's allegations fails to demonstrate that Oteyza acted with the requisite deliberate indifference necessary to establish an Eighth Amendment

claim. In the absence of a genuine dispute of material fact, Oteyza is entitled to summary judgment in his favor as a matter of law.

<u>State Defendants</u>

Warden Kathleen Green and Sharon Baucom, M.D., Director of Clinical Services for the Department of Public Safety and Correctional Services ("DPSCS"), argue they are entitled to dismissal or summary judgment because Enow fails to show that they acted with deliberate indifference to his serious medical needs. As noted, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw*, 13 F.3d at 799, because the doctrine of respondeat superior does not apply to § 1983 actions, *see Monell*, 436 U.S. at 690; *Love–Lane,* 355 F.3d at 782.

Enow does not allege that Green or Baucom was personally involved in his medical care. Compl. 2, ¶¶ 3-4. Instead, he makes the conclusory claim that Baucom and Green acted with deliberate indifference by failing to provide him adequate medical care after he was attacked by other inmates. *Id.* at 10, ¶ 22. Yet, he does not demonstrate that either had actual knowledge or should have known that a prison employee was providing him with constitutionally inadequate medical care. Rather, the undisputed evidence shows that Dr. Baucom does not practice medicine or provide care to inmates in the custody of the Maryland Division of Corrections (DOC). Baucom Decl. ¶ 2, ECF No. 31-3. Nor does she supervise the staff of the private medical contractor (i.e., Wexford), who provide care to DOC inmates. *Id.* Moreover, as discussed, Oteya was not providing constitutionally inadequate medical care, and Enow has not shown that any other medical provider was. Accordingly, Enow has failed to establish supervisory liability as to either Dr. Baucom or the Warden, *see Shaw,* 13 F.3d at 799, and I will

grant their Motion for Summary Judgment. And, given that I granted Wexford's Motion to Dismiss, ECF No. 22, because Enow failed to state a claim against Wexford, and granted Oteya and the State Defendants' Motions for Summary Judgment, ECF Nos. 22 and 31, on the basis that Enow has failed to establish an Eighth Amendment claim for inadequate medical care against any of them, thereby resolving all claims in this case, I will deny Enow's Motion for Summary Judgment, ECF No. 14. In sum, the record before me on summary judgment belies Enow's allegations in his initial complaint that he is in imminent danger, which was his justification for seeking to avoid the consequences of the three-strikes rule and the requirement to submit the full filing fee. As such, this case is an example of Enow's abuse of the imminent danger standard, and warrants the additional restrictions that I will impose on his future efforts to file claims without paying the full filing fee on the basis of imminent danger.

### ***Enow v. Foxwell, et al.,* Civil Action No. PWG-17-850**

Following the dismissal of numerous claims that did not allege imminent danger, what remain in this case are Enow's Eighth Amendment claim against Talmadge Reeves, M.D. that he is in imminent danger of injury because his psychotropic medication was discontinued, and his Eighth Amendment claim against Warden Ricky Foxwell that he is in imminent danger due to his exposure to "inadequate ventilation that causes him labored breathing, nasal congestion, migraine headaches, watery eyes, and difficulty sleeping" after his assignment to segregation housing. Order, ECF No. 8; *see also* Compl., ECF No. 1; Enow Aff. in Support of Pl.'s Mot. for Sum. J. 5-7, 10-17, ECF No. 12-1. Defendants Foxwell and Reeves have filed separate Motions to Dismiss, or in the Alternative, for Summary Judgment. ECF Nos. 17, 25. Enow has filed verified oppositions to Defendants' Motions with exhibits and declarations. ECF Nos. 20, 33. Dr. Reeves filed a reply. ECF No. 36.

Enow claims that on February 17, 2017, Dr. Reeves discontinued his psychotropic medication "without notice or due process," in violation of the Eighth Amendment, which caused him to suffer depression, mood and behavior changes, and panic attacks. Compl. 6, ¶ 7; Enow Aff. in Support of Pl.'s Mot. for Sum. J. 5-7, 10-12, ECF No. 12-1. Further, Enow alleges he that was exposed to inhumane conditions of confinement in violation of his rights under the Eight Amendment while in disciplinary segregation housing. Specifically, he alleges there were toxic fumes, excessive odors, unidentified articles in the air and excessive dust and lint particles due to poor air flow in his cell.[7] Enow claims that as a result of these conditions, he suffered choking sensations, labored breathing, constant cluster migraine headaches, change in voice, nasal congestion, watery eyes, and difficulty sleeping. Compl. 6-7, 9, ¶¶ 7, 12; Enow Aff. in Support of Pl.'s Mot. for Sum. J. 12-17.

## *Discussion*

## Dr. Reeves

Enow alleges that Dr. Reeves, the psychiatrist who treated him, violated his rights under the Eighth Amendment when he discontinued his psychotropic medication, allegedly without following standard medical protocol and without penological justification. Compl. 7, ¶ 8; Pl.'s Opp'n to Reeves Mot. 2, ¶ 3. In his Opposition, he insists that he was not hoarding his medication. *Id.* ¶ 4.[8] Enow asserts that he was never charged with a prison rule violation for hoarding medication. Pl.'s Opp'n to Reeves Mot. 3, ¶ 7.

---

[7]   Enow also sent to the Court an envelope containing physical evidence that appears to be dust and lint and a photo copy of a box nasal medication box in support of his Complaint. ECF No. 5-4.

[8]   In his Opposition, he also claims that Reeves was retaliating against him for filing *Baucom*, PWG-16-4042, against the prison medical provider and another doctor. Pl.'s Opp'n to Reeves

Dr. Reeves filed a declaration and verified copies of Enow's medical records to support his dispositive motion. On January 25, 2017, Enow saw Reeves for psychiatric treatment; at that time, Reeves noted that Enow was being seen every 12 weeks to monitor his medication for depression, Zoloft. Med. Recs. 46-48, ECF No. 25-2. On February 13, 2017, Nurse Victoria Midgette noted that Plaintiff was found hoarding 20 Zoloft pills. *Id.* at 52 ("i/m [inmate] was packed up and there was a cup that has 20 zoloft in it, provider notifed.") On February 14, 2017, without seeing Enow, Reeves discontinued his Zoloft prescription because of hoarding. *Id.* at 53-54. On March 24, 2017, Enow submitted a sick call slip stating that he had not received his anti-depression medication for over one month and was experiencing panic attacks, heart palpitations, chest pains, labored breathing, choking sensations, paralysis in his legs, and back pain. Sick Call Slips 3, ECF No. 17-7. One day later, on March 25, 2017, he filed another sick call slip complaining that he had not received his psychotropic medication. *Id.* at 4. On May 10, 2017, Reeves saw Enow for his "12 week" check-up, although more than 12 weeks had passed since the time of the last visit on January 25, 2017. Enow informed Reeves that he was "prescribed Zoloft 50 mg. and he was breaking it in two [be]cause it cause[s] his stomach to bubble." Med. Recs. 55, ECF No. 25-2. Reeves prescribed Zoloft 25 mg. for Enow. *Id.*

In his declaration, Reeves stated that he continued to see Enow after discontinuing his psychotropic medication in February of 2017 and decided to reorder the medication at half strength at his next appointment, because Enow had been on the medication for many years. Reeves Decl. ¶ 5, ECF No. 25-3. Further, Reeves counseled Enow that, in the future he needed to refuse the medication, rather than pretend to take it or hoard it. *Id.* Reeves asserted that "[i]t

---

Mot. 2, ¶ 4. I will not consider this allegation, because an opposition to a dispositive motion is not a vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

is standard policy in the prison to discontinue medication if the patient is hoarding it." *Id.* ¶ 7. He explained that there are "legitimate reasons to discontinue medication when an inmate hoards medication," such as because "the inmate may be distributing/selling it to other inmates or saving it in order to overdose on the medication." *Id.*

Here, viewing the facts in the light most favorable to Enow, his psychotropic medication was discontinued for hoarding even though he had not been charged with any prison rule violations for hoarding medication. Three months elapsed from the time Enow's medication was discontinued abruptly and when Reeves saw him and again prescribed Zoloft, this time at a lower dosage. During this period, Enow filed two sick call slips complaining he was suffering symptoms from lack of medication. Reeves' response to Enow's Complaint leaves these issues largely unanswered, and they bear on whether Reeves acted with deliberate indifference to Enow's serious medical needs. For example, a dispute exists regarding whether Enow was hoarding his medication and if he was not, it is not clear whether Reeves was aware that the report of hoarding was incorrect. Another dispute exists regarding whether, even if Enow was hoarding his medication or Reeves was not aware the report was inaccurate, Reeves's abrupt discontinuation of Enow's medication without seeing the patient for more than twelve weeks, during which time Enow submitted sick slips regarding alleged adverse effects from the discontinuance, violates acceptable medical standards. And, a dispute exists regarding whether the discontinuation of Enow's medication caused his alleged injuries and, if it did, whether Reeves was aware or should have been aware of such possible effects. It also is unclear whether Reeves knew or should have known about the sick call slips. Where, as here, there are numerous genuine disputes as to material facts, summary judgment is not appropriate.

Dr. Reeves also raises the defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant is not entitled to summary judgment on the basis of qualified immunity, however, if (1) a genuine issue of material fact exists regarding whether the government official violated one of the plaintiff's federally protected rights; and (2) the right at issue was "clearly established" at the time of the events in question. *See id.* at 232.

But Dr. Reeves is not a government official. Rather, he acknowledges that he "performed services through a contract between his employer and the Maryland Department of Public Safety and Correctional Services." Reeves's Mem. 12. Reeves claims that he is entitled to qualified immunity, because if he "was actually employed by the DPSCS, there would be no question that he would be covered by qualified immunity," and therefore it would be "unfair" for him as a "non-government employee[]" to "be left to face liability." *Id.* (citing *Filarsky v. Delia*, 566 U.S. 377, 392-94 (2012)). It is true that in *Filarsky*, the Supreme Court held that private individuals may assert qualified immunity when they are "retained by the [government] to assist [in a task for which] government employees performing such work are entitled to seek the protection of qualified immunity." 566 U.S. at 393-94. But, Dr. Reeves fails to cite any authority that *Filarsky* has been extended to contractual medical or mental health care providers working in correctional facilities. Moreover, even if were Reeves entitled to assert qualified immunity, the right at issue in this case is a clearly established right. Knowingly denying necessary medication and medical care to treat an inmate's serious health need violates clearly established constitutional rights of which a reasonable person would have known. Here the

evidence is sufficient to establish a genuine issue of material fact, and the right at issue was clearly established at the time. Therefore, even if legally permitted to seek the protection of qualified immunity, Reeves has not demonstrated that the circumstances of this case entitle him to it. *See Pearson v*, 555 U.S. at 232.

Accordingly, I will deny Reeves's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 25, without prejudice. Because he may yet be able to address with supporting exhibits and declarations the disputes of material facts that I have already identified, I will allow him 40 days in which to do so and file a brief supplemental memorandum that is limited to this discrete issue. . Within 30 days of Reeves's renewed motion, Enow may file a reply that comports with Enow's court-imposed filing limitations.[9] *See* Nov. 27, 2017 Order, ECF No. 30. If counsel does not renew the dispositive motion within this time, a scheduling order shall issue.

<u>Warden Foxwell</u>

Warden Foxwell moves for dismissal or summary judgment in his favor on several grounds, including the inapplicability of respondeat superior to § 1983 claims and the affirmative defense of failure to exhaust administrative remedies.

*1. Respondeat Superior*

As earlier discussed, an individual cannot be held liable under 42 U.S.C. §1983 under a theory of respondeat superior and must instead demonstrate personal involvement or establish supervisory liability. *See Shaw*, 13 F.3d at 799; *Vinnedge*, 550 F.2d at 928–29. Enow does not allege that Foxwell was personally involved in the alleged poor ventilation of his cell. He only

---

[9] I will review the supplemental memorandum and exhibits submitted by Dr. Reeves, and if the memorandum is longer than ten pages, I will adjust as appropriate the page limits on the reply that Enow may file. Similarly, if necessary, I will adjust the number of exhibits that Enow may file as part of his reply.

claims that, "[a]s the Warden of the prison, [Foxwell] manages the day-to-day operations and execute [sic] its policies while acting under the color of state law." Compl. 2, ¶ 3(iii). Thus, he also fails to allege that Foxwell had actual or constructive knowledge of the poor ventilation of his cell or acted with deliberate inference to hold him liable based on principles of supervisory liability. Accordingly, the claim against Foxwell will be dismissed. *See Shaw*, 13 F.3d at 799; *Vinnedge*, 550 F.2d at 928–29.

### 2. *Exhaustion of Administrative Remedies*

Even if Enow had stated a colorable claim against Foxwell, the claim was not administratively exhausted before he filed this Complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624-25 (D. Md. 2015) (internal citation omitted).

For most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* Code of Md. Regs. ("COMAR"), tit. 12 § 07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 § 07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 § 07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it to an administrative law judge for a hearing. Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR, tit. 12 § 07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination. *See* Corr. Servs. § 10-209(b)-(c).

Lt. Stephen Elliott, the Housing Unit Manager, states that Enow never complained to him about lint particles, dust, or odors. Elliott Decl., ECF No. 17-2. Enow appears to argue that Elliott did not receive his complaint because he was not the Housing Unit Manager at the relevant time. Pl.'s Opp'n to Foxwell Mot. 4.

Enow filed an ARP request about the ventilation in his cell, ARP ECI-077l-17, on March 24, 2017, one day before he signed and dated the Complaint in this case on March 25, 2017. Compl. 13; Ward Decl. ¶ 3, ECF No. 17-3; *see also* ARP ECI 0771, ECF No. 17-3, at 5-7

(attachment to Ward Decl.). That ARP was administratively dismissed on March 27, 2017, after Enow filed suit, because it contained multiple unrelated issues, and Enow was asked to resubmit one claim on each ARP form. ARP ECI 0771, at 5-7. Thus, Enow did not administratively exhaust his claim through that ARP. *See Kitchen*, 116 F. Supp. at 624-25.

On April 4, 2017, Enow filed ARP ECI-0862-17, complaining for the second time about lack of out-of-cell exercise and exposure to poor ventilation in his cell.[10] Ward Decl.; *see also* ARP ECI 0862-17, ECF No. 17-3 at 7-8 (attached to Ward Decl.). Because this ARP was filed after Enow filed this lawsuit, it also cannot fulfill the "precondition" of exhausting administrative remedies before filing suit. *See Kitchen*, 116 F. Supp. at 624-25. Also, the ARP was dismissed administratively by the Institutional ARP Coordinator for procedural reasons. *Id.* Enow did not pursue his claim to the Inmate Grievance Office ("IGO"). Neverdon Decl., ECF No. 17-4.[11] This failure to present his claim to all levels of the administrative process is another reason that this claim is unexhausted and must be dismissed. *See* Corr. Servs. §§ 10-206 - 10-210.

For these reasons Defendants Foxwell's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 17) will be granted.

### *Enow v. Foxwell, et al.*, Civil Action No. PWG-17-2312

On August 9, 2017, Enow filed a Complaint with a Motion for Leave to Proceed in Forma Pauperis. ECF Nos. 1, 2. On August 29, 2017, Enow filed a verified Motion for a

---

[10] Enow claims that this ARP was his resubmission of ARP ECI-077-17. Pl.'s Opp'n to Foxwell Mot. 6, ¶ 8; *see also* ECF No. 5-1 at 2 (dismissal by Headquarters Coordinator of ARP ECI-862 as untimely). Even if this were true, Enow does not refute his failure to exhaust his complaint at the IGO level.

[11] Neverdon states that, after reviewing IGO records, he did not find any complaints or grievances asserting that Enow was placed in a poorly ventilated cell in February of 2017. Neverdon Decl.

Temporary Restraining Order and Preliminary Injunction ("Preliminary Injunction Motion"),[12] asking to be placed in protective custody. ECF No. 4. Also pending is Enow's "Motion for Supplemental Evidence in Opposition to Defendant's Order to Show Cause to Plaintiff's Motion for a Preliminary Injunction" (Pl.'s Supp. Ev. In Opp'n Mot."), ECF No. 20.

In the Complaint, Enow again presents claims that he is in danger because he is viewed as a government informer or snitch. Compl. 4, ¶ 9, ECF No 1. He claims that: (1) on December 8, 2016, he was assaulted with feces by prison gang members based on allegations that he is a government snitch, which was encouraged by Officers Walters (also known as Warren), A. Christopher, and Hall (*id*. at 4-5, ¶¶ 9-10); (2) on December 26, 2016, he was assaulted by his cellmate Eric Porter because Porter believed Enow to be a government snitch (*id*. at 5, ¶ 11); (4) on February 13, 2017, Enow was "attacked with death threats" by his cellmate Kevin Langley on the basis of allegations made by Officer Opal Lee that he is a government snitch (*id*. at 5, ¶ 12); (5) on April 6, 2017, Enow was placed in a housing unit near his "known enemy" Langley by case Management Specialist Paul Knight and Lt. Elliot and, after he refused housing, was charged with and found guilty of an inmate rule violation and placed in disciplinary segregation (*id*. at 5-6, ¶,13); (6) his ARP request and IGO complaint that he is unsafe because he is labelled a snitch were dismissed (*id*. at 6-8, ¶¶ 14-15); (7) on April 18, 2017, Paul Knight informed Enow that there was no record in the case management system that he was in danger or threatened by gang affiliated inmates and that Division of Correction policy provides that an inmate must spend two years in a correctional facility before requesting a transfer to another

---

[12] A preliminary injunction is distinguished from a temporary restraining order ("TRO") only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.,* 452 F.3d 275,281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). As the show cause order was issued and there was a meaningful chance to respond, Enow's Motion will be treated as a Motion for a Preliminary Injunction.

facility (*id*. at 7, ¶ 16); (8) on July 17, 2017, Officer Thorne and other officers conducted a cell search of his property without searching his then cellmate Geoffrey Bird's property, and earlier that day Enow had alerted officers that a weapon had been placed in the bathroom for Bird, which guards then recovered (*id*. at 8, ¶ 17); (9) on July 25, 2017, he was found guilty at an adjustment hearing of refusing housing in the general population and in the same housing unit as his enemy Eric Porter, and sentenced to 45 days of disciplinary segregation with 45 days of good time credits revoked (*id.* at 8-9, ¶ 18); (10) on July 25, 2017, he was assaulted and injured by his cellmate due to allegations that Enow is a government snitch and correctional staff refused him access to a medical evaluation (*id*. at 9, ¶ 19); and (11) on July 27, 2017, he was stabbed in his eye and lip by his cellmate William Spicer (*id*. at 9, ¶ 20).  Enow also claims that (12) these actions represent a pattern of intentional retaliation against him for filing previous civil rights actions, and correctional staff failing to protect him from harm.[13]

When Enow filed this complaint on August 9, 2017, he allegedly had been attacked by another inmate on July 25, 2017, and by his cellmate William Spicer days on July 27, 2017.[14] As this Court noted in *Enow v. Wolfe, et al*., PWG-17-341, Enow is a difficult inmate to house safely. Mem. Op. 14, ECF No. 50.  Enow's repeated involvement in altercations with other inmates, particularly with his cellmates, may largely be due to his lack of appreciation or

---

[13] Enow has raised his claim that he faces danger because he is labeled a government snitch in similar form and content in other cases.  For example, in PWG-17-341, Enow claimed that Officers Christopher, Hall, and Warren called him a snitch in front of other inmates and Christopher refused to intervene when inmates threw urine and feces on him.  Compl. 7-10, ECF No. 1 in PWG-17-341.  These claims were dismissed for failure to exhaust administrative remedies.  In that case, Enow also claimed that Elliott and Knight placed him in dangerous housing and ignored his requests for protective custody.  *Id*. at 12; Mot. to Am. 1-3, ECF No. 11 in PWG-17-341. This claim was dismissed as unexhausted.

[14] In his Preliminary Injunction Motion, Enow identifies his July 25, 2017 attacker as Mark Jackson.  Pl.'s Prelim. Inj. Mot. 1, ¶ 3.  Enow also claims he was attacked on August 17, 2017, by inmate Ralph Picarell.  *Id*. at 2, ¶ 5.

disregard for the consequences of his comments and actions around other inmates.[15]  Prison officials have repeatedly reassigned Enow to new cellmates, which indicates they have taken some action, and belies the notion of deliberate indifference,[16] but does not absolve them of their duties with regard to inmate safety.  *Id*. at 15.

Thus, the Court will permit Enow's claims that he was assaulted on July 25, 2017 and July 27, 2017, as well as his claim that these attacks, taken together, represent a pattern of deliberate indifference (Claims 10, 11 and 12 above) to proceed. Only these claims will proceed, however, and the focus of the remainder of this case must be directed to them. Defendants must, in accordance with Rule 12(a) of the Federal Rules of Civil Procedure and *In re State Prisoner Litigation*, Misc. No. 00-308, Standing Order 2012-01 (D. Md. 2012), file either an answer, or if appropriate, a dispositive motion with respect to these three discrete claims.  If they choose to file a dispositive motion, Defendants also will address what actions, if any, have been taken to

---

[15] When Enow was confined at the Maryland Correctional Institution-Hagerstown, an officer explained:

> Mr. Enow was difficult to place with other inmates and to keep him safe. He considered himself better educated than other inmates, and he would say things to other inmates that would irritate them and instigate altercations. Most, if not all, of Mr. Enow's problems were self-inflicted.

> Mr. Enow frequently felt threatened and would go to officers to inform them of feeling threatened. Generally the threat was perceived but not actual. In some instances, Mr. Enow would publically point out the inmates that he considered a threat. On one occasion, Mr. Enow felt threatened in the chow hall, went to correctional officers and began pointing out three inmates. . . .

> Mr. Enow's habit of publicly pointing out supposed threats, particularly including the chow hall incident, result in the feeling that he was a "snitch." Correctional officers did not label Mr. Enow a "snitch." However, his own actions led some inmates to consider him a snitch.

June 12, 2017 Mem. Op. 7, ECF No. 32 in *Enow v. Dovey,* PWG-16-615.

[16]  Indeed, Enow appears to have been assigned inmate Corey Reed as his cellmate at that time. Prelim. Inj. Mot. 2, ¶ 6. Later, he was assigned Traymar Brown as his cellmate.  Brown Decl., ECF No. 14.

ensure Enow's safety in light of his past history of attacks and altercations with other inmates. With the exception of the claims identified above, the remainder of Enow's claims will be dismissed pursuant to 28 U.S.C. § 1915(g) because they do not demonstrate that Enow was in imminent danger at the time he filed this Complaint. If Enow wants to pursue these other claims, he may do so by refiling them in a separate complaint and paying the full filing fee.

<u>*Motion for a Temporary Restraining Order and Preliminary Injunction*</u>

On August 29, 2017, Enow filed for a temporary restraining order to place him in protective custody for his safety. Prelim. Inj. Mot. He alleges three assaults by other inmates between July 25, 2017 and August 17, 2017 and that, most recently, Corey Reed became his cellmate on August 17, 2017 and confided to him four days later that Officer Ryan Thornes instructed Reed to murder Enow in retaliation for filing complaints. *Id.* at 2. Enow provided Reed's declaration in support. Aug. 21, 2017 Reed Decl. 1, ECF No. 4-2; *see also* Sept. 10, 2017 Reed Decl., ECF No. 6-1. I granted Enow's Motion to Proceed in Forma Pauperis as to his claim in the Motion for a Temporary Restraining Order and Motion for Preliminary Injunctive Relief that he is in danger because other inmates have assaulted him repeatedly and correctional officers encourage inmates to harm him, and I directed the Office of the Attorney General to filed an expedited response. ECF No. 5.

The Office of the Attorney General responded with verified information showing that as of August 17, 2017, Corey Reed was no longer housed in the same cell as Enow. Shumaker Decl. 1, ECF No. 9-6. Moreover, Enow did not add Corey Reed to his known enemies list. *Id.* at 4. Officer Thornes provided a declaration that he has never threatened, encouraged, or knowingly permitted another inmate, including Reed, to assault, threaten, harm or kill Enow. Thornes Decl. ¶¶ 4-5, 9-10, ECF No. 9-2. Further, Thornes denies ever retaliating against Enow

for filing ARP requests or lawsuits. *Id. ¶ 8.* Thornes adds that he has observed many times when Enow belligerently antagonized and instigated altercations with his cellmates. *Id.* ¶ 11. Assistant Warden West and Lieutenant Stephen Elliott also deny they instructed, coerced, or forced Reed to threaten or harm Enow. West Decl., ECF No. 9-3, Elliott Decl, ECF No. 9-4.

Shortly before this Response was filed, Enow filed a Motion for Supplemental Evidence, with his cellmate Traymar Brown's October 11, 2017 declaration attached. Brown Decl., ECF No. 14. Brown states that Enow "is not a problem person nor raise[s] his voice in a belligerent manner towards [Brown] as his current cellmate." *Id.* In his Motion for Supplemental Evidence in Opposition to Defendants' Order to Show Cause to Plaintiff's Motion for a Preliminary Injunction, Enow alleges that Lieutenant Elliott directed an officer not to release Enow's legal material to him without authorization. Pl.'s Supp. Ev. in Opp'n Mot. Enow does not specify what legal material he needs or how this will support his Preliminary Injunction Motion. Specifically, Enow does not explain how this material will cast light on Enow's claim that he is in danger and needs injunctive relief. Accordingly, the Motion (ECF No. 20) will be denied.

"A preliminary injunction is an extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks omitted). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Defense Council, Inc.,* 555 U.S. 7, 20 (2008); *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Each element of this standard must be satisfied for injunctive relief to issue. *See Pashby*, 709 F.3d at 320-21(stating that each element must be separately considered and satisfied as articulated).

"[T]he burden placed upon a [plaintiff] to state a claim for a preliminary injunction is high." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.,* 71 F. Supp. 3d 525, 538 (D. Md. 2014). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Here, there is no dispute that Enow has been moved to another cell away from Corey Reed. Further, Enow's own evidence in the form of an October 2017 affidavit from Brown, his current cellmate, demonstrates that they are coexisting without animosity. ECF No. 14. Enow has not alleged any assaults or threats since the August 17, 2017 assault and Reed's August 21, 2017 disclosure that Thornes allegedly directed him to murder Enow. Thus, Enow is unlikely to suffer irreparable harm. Defendants' declarations directly refuting Enow's assertions of imminent danger weigh against the likelihood that he will succeed on the merits of this case. Enow's claim that he risks loss of his normally functioning eye unless he is placed in protective custody is speculative and overstated. In sum, Enow presents no exceptional or compelling circumstances to conclude the balance of equities tips in his favor or an injunctive will serve the public interest. Indeed, courts should exercise great caution before interfering with the daily administration of a prison. *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979) (explaining that administrative decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer

to their expert judgment in such matters" (quoting *Pell v. Procunier*, 417 U.S. 817, 824 (1974))).
In sum, the Motion provides no basis to warrant the drastic and extraordinary relief requested
and will be denied.

## CONCLUSION

For the above stated reasons the Court shall enter a separate order as follows: In *Enow v. Baucom*, Civil Action No. PWG-16-4042, Enow's Motion for Summary Judgment (ECF No. 14) IS DENIED. The Medical Defendants' Motion to Dismiss or in the Alternative, Cross-Motion for Summary Judgment (ECF No. 22) IS GRANTED. The State Defendants' Motion to Dismiss or Cross Motion for Summary Judgment (ECF No. 31) IS GRANTED.

In *Enow v. Warden, et al.*, Civil Action No. PWG-17-850, Warden Foxwell's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17) IS GRANTED. Dr. Reeves's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 25) IS DENIED without prejudice to renewal within forty days.

In *Enow v. Foxwell,* Civil Action No. PWG-17-2312, Enow's Motion for Supplemental Evidence in Opposition (ECF No. 20) and the Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 4) ARE DENIED. Enow's claims 1-9 ARE DISMISSED without prejudice to refiling in a separate action with payment of the full filing fee. Service shall proceed as to Enow's claims that he was assaulted on July 25 and 27, 2017 by inmates as part of a pattern of retaliation against him for filing civil rights complaints, due to his label as a government informant, and due to Defendants' failure to protect him from harm. Enow is reminded that this case shall proceed as to these claims only and that the number of pages he files in this case must comply with the Court's prior order, ECF No. 38 in *Baucom*, PWG-16-4042.

Finally, when reviewing the history of Enow's many 42 U.S.C § 1983 filings in this Court, several conclusions are apparent. Disregarding his habeas claims, Enow has filed eighteen § 1983 cases. He has been unsuccessful with regard to the vast majority of them and has yet to have a case result in judgment in his favor. In the process, he has become subject to the three-strikes rule of the PLRA, but has managed to avoid having to pay the full filing fee as a consequence of the three-strikes rule by continuing to file new lawsuits that assert that he is in imminent danger. Given the number of cases (and claims within cases) in which the Court has found that Enow is not actually in imminent danger, Enow clearly is abusing the imminent danger exception to 28 U.S.C. § 1915(g). Further, Enow has displayed a pattern of filing voluminous pleadings, memoranda, and affidavits that are prolix, repetitive, and which attempt to relitigate already resolved claims, the effect of which imposes a significant burden on the Court, as well as the defendants. But it also is true that some of Enow's § 1983 claims have survived a motion to dismiss or motion for summary judgment, even if he has yet to secure a judgment in his favor. It further is clear that many of the claims that Enow has attempted to assert may well flow from his own conduct in antagonizing other inmates.

There is little reason to expect that Enow will change his ways, so it is foreseeable (perhaps inevitable) that he will continue to file claims in the future. Of course, if he is willing to pay the full filing fee, there is no limit to him doing so. But, since he has abused the imminent danger exception to § 1915(g), a procedure must be put in place that allows Enow the opportunity to demonstrate that he truly is in imminent danger, without allowing him to employ the vexatious and burdensome measures that have been the hallmark of his past filings.

For this reason, effective with the date of this Memorandum Opinion and the accompanying Order, the following procedures will be in effect. If Enow seeks to file a lawsuit

invoking the imminent danger exception to the requirement that he pay the full filing fee imposed by 28 U.S.C § 1915(g), his filing will be limited to 7 single-sided, legible pages, unless authorized by the Court to file a longer submission. His filing must clearly identify each individual who he claims is responsible for the circumstances constituting imminent danger, and describe with facts, not conclusory language or legal citations, what he contends each individual personally has done. If he seeks to assert supervisory liability, he must state in non-conclusory fashion how it is that the individual has actual or constructive knowledge that a subordinate was engaged in the conduct underlying his complaint and how that supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged conduct, as well as the causal link between that defendant's inaction and any alleged constitutional injury.

Enow may verify his complaint, but he may not file affidavits that purport to establish additional facts to support his contentions. He may attach affidavits or declarations of others, and such exhibits may not exceed 25 pages in total, unless permitted by the Court to file more. Once any future complaint is filed, the defendants will be directed by the Court to file, within 14 days, a response to Enow's filing that addresses his allegations of imminent danger. Their submission also shall be limited to 7 single-spaced pages, unless given permission by the Court to file a longer submission, and may be supported by affidavits, declarations and exhibits. Unless the Court requests that Enow file a reply, he shall not do so. I then will review on an expedited basis the filings and determine whether Enow has put forth a plausible claim for imminent danger. If so, he will be allowed to file an amended complaint without the full filing fee. If not, he will be allowed to file an amended complaint accompanied by the full filing fee.

I stress to Enow and the defendants that the purpose of this new procedure is to provide the Court with an expeditious method to determine quickly whether Enow has alleged a plausible case of imminent danger. For that reason, the filings shall be limited to that issue alone, and must be supported by factual particularity, not conclusory statements and citations to legal authority.

A separate Order consistent with this Memorandum Opinion follows.


February 15, 2018                          _____/S/_____
Date                                       Paul W. Grimm
                                           United States District Judge